

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

---

Rod J. Rosenstein
*United States Attorney*

Kwame J. Manley
*Assistant United States Attorney*

*36 South Charles Street*
*Fourth Floor*
*Baltimore, Maryland 21201*

*410-209-4800*
*TTY/TDD:410-962-4462*
*410-209-4869*
*FAX 410-962-3124*

January 6, 2009

Vincent H. Cohen, Jr., Esq.
601 Pennsylvania Avenue NW
North Building - 9th Floor
Washington, D.C. 20004-2601

    Re:    United States v. Terrence White
              Criminal Case No. JFM-09-60

Dear Mr. Cohen:

       This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by Friday, ~~January 23,~~ *February 6* 2009, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

       1.    The Defendant agrees to waive indictment and plead guilty to a Criminal Information which will charge him with Mail Fraud, in violation of 18 U.S.C. § 1341. The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

### Elements of the Offense

       2.    The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: (1) during the dates alleged in the Criminal Information, the Defendant had a scheme to defraud; (2) the Defendant used the mail in furtherance of the scheme; and (3) the Defendant acted knowingly and willfully with specific intent to defraud.

Revised 8/8/08



Penalties

3.  The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: 30 years imprisonment, $1,000,000 fine, 5 years supervised release. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

Waiver of Rights

4.  The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

   a.  If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   b.  If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

   c.  If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

---

[1]  Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

    d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

    e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

    g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

    h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status.

## Advisory Sentencing Guidelines Apply

  5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

  6. This Office and the Defendant understand, agree and stipulate to the following Statement of Facts which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

## STATEMENT OF FACTS

Defendant Terrence White participated in a multi-million dollar mail fraud and wire fraud scheme to purchase numerous properties in Maryland, Virginia, and Washington, DC, using mortgage and settlement documents containing false statements and material misrepresentations. As part of the scheme, White and others paid several straw buyers $10,000 per property to purchase houses. One of those straw buyers was co-defendant Sabrina Weinberg. Weinberg purchased four properties for White and others, including locations at 1429 W. Lombard Street, Baltimore, Maryland 21223; 34 Q and 32 Q Street, Washington, DC 20001; and 119 Bates Street NW, Washington, DC 20001. White and others paid Weinberg approximately $40,000 ($10,000 per property) for the purchases. Weinberg and others used false and fraudulent loan applications and closing documents to qualify for the mortgages. The mortgage documents had false income amounts, misrepresentations concerning Weinberg's other mortgage loans (which she did not disclose), and false claims about her assets. Co-conspirator Kara McIntosh prepared many of the mortgage documents. Each property was listed as Weinberg's primary residence.

In addition, White and his co-conspirators T.R. and O.A. created fraudulent invoices to claim that their company Brotherly Investment Group performed "renovations" on the Weinberg properties. Using these false documents, White and his co-conspirators were was able to be "re-paid" at closing for the renovations that they claimed they had already done. White, T.R., and O.A. received wire transfers of $515,820 for the four Weinberg properties. White knew that the false invoices and other loan documents were mailed to the title companies, banks, and mortgage lenders to facilitate these fraudulent deals. After receiving the fraudulent funds, White split the proceeds equally with T.R. and O.A.

White, T.R., O.A., and others repeated this fraud scheme with over fifteen straw buyers and approximately twenty-five properties in Maryland, Washington, D.C., and Virginia. White and others created false invoices and other false documents to execute this scheme. Many of the loan applications for these buyers had misrepresentations concerning the buyers' income and assets. To disguise the nature of this scheme, White and others used the same title company agent J.L. for many of the transactions. Also, White and others had the straw buyers list false asset information claiming large account balances at various banks, including M&T Bank. White, T.R., O.A., J.L. and others would then use co-conspirator J.A., a relative of O.A. who worked at M&T Bank, to send "verification letters" claiming that the straw buyers had such assets. White and others knew that the asset information was false. These verification letters were mailed to the banks and mortgage lenders to facilitate the fraud scheme. M&T Bank fired J.A. after her participation in the fraud scheme became known.

From 2006 to 2008, White and others received approximately $3,830,418 in fraudulent funds as part of this scheme. Many of the purchased properties have now gone into foreclosure. On October 26, 2007, White and others caused Sterling Title, 201 King Street, Alexandria, Virginia to deposit with a private, commercial interstate carrier false and fraudulent mortgage settlement documents for property at 152 N. Potomac Street, Baltimore, Maryland 21224, which was mailed to American Bank, 9001 Edmonston Road, Suite 100, Greenbelt, MD 20770.

The loss amount in this scheme foreseeable to the Defendant was more than $2.5 million. The Defendant was an organizer and leader of this fraud scheme that involved more than five participants and over 10 victims.

## ADVISORY GUIDELINE STIPULATION

This Office and the Defendant agree that the Defendant has a base offense level of 7 pursuant to U.S.S.G. § 2B1.1. The offense level is increased by 18 levels because the foreseeable loss amount was more than $2,500,000 but less than $7,000,000. The offense level is increased by 2 levels because it involved more than 10 victims pursuant to U.S.S.G. § 2B1.1(b)(2)(A). Finally, the offense level is increased by 2 levels because the Defendant was an organizer and leader of this criminal activity that involved more than five participants, pursuant to U.S.S.G. §3B1.1(c). The total offense level is therefore 29.

This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. With the three-levels for acceptance of responsibility, the adjusted offense level is 26.

This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

7.   The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he

is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8.  This Office and the Defendant agree that with respect to the calculation the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

## Obligations of the United States Attorney's Office

9.  At the time of sentencing, this Office will make a sentencing recommendation within the low end of the advisory guideline range. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

10. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

## Waiver of Appeal

11. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed, including any fine, term of supervised release, or order of restitution and any issues that relate to the establishment of the advisory guidelines range, as follows: the Defendant waives any right to appeal from any sentence within or below the advisory guidelines range resulting from Criminal History Category I and an adjusted base offense level of 26, and this Office waives any right to appeal from any sentence within or above the advisory guidelines range resulting from Criminal History Category I and an adjusted base offense level of 26. Nothing in this agreement shall be construed to prevent either the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), and appealing from any decision thereunder, should a sentence be imposed that is illegal or that exceeds the statutory maximum allowed under the law or that is less than any applicable statutory mandatory minimum provision. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

12. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal

responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Restitution

13.     The Defendant agrees to the entry of a Restitution Order for the full amount of the victims' losses. The final restitution amount will be determined at sentencing. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and §§ 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.

## Court Not a Party

14.     The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone,

withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

15. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Kwame J. Manley
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

2/6/09
Date

_____
Terrence White

I am Terrence White's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

2/6/09
Date

_____
Vincent H. Cohen, Jr., Esq.

-9-